UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 19-cr-10124-DJC |
| | ) | |
| WAAD ALZEREI | ) | |

**DEFENDANT'S POST-HEARING SUPPLEMENT TO
MOTION TO DISMISS OR RELEASE**

Defendant submits this supplement to his motion to dismiss or release, D.E. 25, to respond to some of the issues raised at the June 4 hearing.

**1.      The Decisions of the D.C. and Sixth Circuits Are Not Persuasive**

The D.C. Circuit case is admittedly on all fours with this case. *See United States v. Vasquez-Benitez*, 919 F.3d 546 (D.C. Cir. 2019).[1] It was wrongly decided for at least two reasons. First, the court incorrectly found that the BRA and the INA do not conflict, as a general matter. *See id.* at 553 ("the BRA and the INA [do not] conflict more generally").This cannot be correct. The sole purpose of detention under the INA is to facilitate removal. *See id.*; 8 U.S.C. § 1231(a)(2). As the government admitted at the hearing, DHS may not detain for any other purpose. A principal purpose of the BRA, however, is to ensure defendants' presence at court. These purposes are diametrically opposed. ICE detention is designed to make the defendant *unavailable* for court. The government argued that point in front of the Magistrate Judge. *Cf. United States v. Hernandez-Bourdier*, No. CR 16-222-2, 2017 WL 56033, at *11 (W.D. Pa. Jan. 5, 2017) (discussing same issues as they arise in the

---

1  In *Vasquez-Benitez*, the defendant was in ICE custody as an illegal alien subject to a final order of removal under 8 U.S.C. § 1231(a). *United States v. Vasquez-Benitez*, 919 F.3d 546, 549 (D.C. Cir. 2019). He asserted a claim for withholding of removal. *Id.* He was then transferred to U.S. Marshal custody for prosecution for illegal reentry. *Id.* The Magistrate Judge ordered him released under the Bail Reform Act (BRA), 18 U.S.C. § 3142. *Id.* ICE then took the defendant back into immigration custody under 8 U.S.C. 1231(a), the provision at issue here. *See id.* at 549 & n.1.

release determination context). This conflict between the INA and the BRA exists, as a matter of statutory interpretation, even where DHS is not able to immediately effectuate the goal of deportation.[2]

Second, the D.C. and Sixth Circuits erroneously believed that detention of an alien released under the BRA is mandatory under the INA. *See* 8 U.S.C. § 1231; *Vasquez-Benitez*, 919 F.3d 546 at 553; *United States v. Veloz-Alonso*, 910 F.3d 266, 269-70 (6th Cir. 2018). That conclusion is incorrect because the INA's mandate to detain an alien upon completion of criminal "confinement" does not attach until the criminal case concludes. *See* § 1231(a)(1) (defining when the "removal period" begins); § 1231(a)(2) (detention is mandatory during the "removal period" period); *United States v. Blas*, No. CRIM. 13-0178-WS-C, 2013 WL 5317228, at *5 (S.D. Ala. Sept. 20, 2013) (removal period under § 1231(a)(1) does not commence until the alien is "release[d] from incarceration pursuant to a final judgment of conviction"); *Trujillo-Alvarez*, 900 F. Supp. 2d at 1174 & 1175 (same). Where, as here, there is no final judgment in the criminal case, "there is no legal requirement, or even any practical necessity, that ICE detain [Mr. Alzerei] in order to remove and deport him before the pending criminal proceedings can be concluded." *Trujillo-Alvarez*, 900 F.Supp.2d at 1175; *Blas*, 2013 WL 5317228, at *5. The D.C. Circuit and the Sixth Circuit thus analyzed the wrong question when they concluded that "'[r]eading the BRA's permissive use of release to supersede the INA's mandatory detention does not follow logically nor would doing so be congruent with our canons of statutory interpretation'" (quoting *Veloz-Alonso*, 910 F.3d at 270)).

In fact, the reverse is true: while the INA does not mandate detention, the BRA does mandate release.[3] Under 18 U.S.C. § 3142(b), the judicial officer "shall order []pretrial release …

---

2  Mr. Alzerei appeared before the immigration judge on June 7, 2017. The judge denied Mr. Alzerei's appeal, affirming the determination of the asylum officer. The judge's decision is final.

3  The government has additionally argued that detention is mandated under 8

*unless*" certain conditions are met. Those conditions are not met here, as found by Magistrate Judge Kelley. The government has not appealed that finding. This fundamentally different starting point leads to a fundamentally different result: the BRA – not the INA – is the more specific provision and it controls. *See, e.g., Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524 (1989) ("A general statutory rule usually does not govern unless there is no more specific rule"); *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987) ("'[w]here there is no *clear* intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment'" (emphasis in original)).

The Sixth Circuit's decision is additionally factually distinguishable because it addresses detention after a guilty plea. *See Veloz-Alonso*, 910 F.3d at 267, 269. At that stage, the BRA strikes a different balance of interests and applies a presumption of detention. *Compare* 8 U.S.C. §3142 (presuming pretrial release), *with id.* § 3143 (presuming detention after guilty finding). The balance of interests struck by the BRA, in that situation, is fundamentally different. Mr. Alzerei asserts an interest in his liberty, in order to aid in his defense, that is not present in the post-plea context. *See* ABA Criminal Justice Standard 10-1.1 (explaining that among the "[p]urposes of the pretrial release decision" is "providing due process to those accused of crime" and "[d]eprivation of liberty pending trial … interferes with [defendants'] ability to defend themselves").[4]

---

U.S.C. § 1225(b)(a)(B)(iii)(IV), *See* Govt. Oppn, D.E. 31, at 4, 9, a provision that applies to individuals seeking asylum. As stated at the hearing, Mr. Alzerei submits that the Court should evaluate the authority for ICE detention as of the time of Magistrate Judge Kelley's release order. At that time, § 1225 was not at issue because Mr. Alzerei had not sought a credible fear interview. Undersigned counsel believes, based on conversations with his immigration attorney, that the credible fear process could not begin until Mr. Alzerei was in ICE custody. Moreover, given the denial of the credible fear determination, this provision may not apply at all. *See* n.2, above.

4 Available at: https://www.americanbar.org/groups/criminal_justice/publications/criminal_justice_section_archive/crimjust_standards_pretrialrelease_blk/

**2. The BRA codifies a precise balancing of interests that precludes detention under the INA**

In adopting the BRA, Congress recognized the competing interests at play in a release determination. The interests of the individual are balanced against the public's interest in (a) having the defendant appear for court and/or (b) public safety. Congress determined that the BRA struck a precise, constitutionally permissible balance of these interests. *See* S. REP. 98-225, 8, 1984 U.S.C.C.A.N. 3182, 3191, 1983 WL 25404 ("The Committee is satisfied that pretrial detention is not per se unconstitutional. However, the Committee recognizes a pretrial detention statute may [] be constitutionally defective if it fails to provide adequate procedural safeguards or if it does not limit pretrial detention to cases in which it is necessary to serve the societal interests it is designed to protect"). The BRA has been upheld by the courts as a constitutionally acceptable balancing point. *See United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception. We hold that the provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception"); *United States v. Byrd*, 969 F.2d 106, 109-10 (5th Cir. 1992) (the BRA "clearly favors nondetention. It is not surprising that detention can be ordered only after a hearing; due process requires as much….even after a hearing, detention can be ordered only in certain designated and limited circumstances"); *United States v. Sanchez-Martinez*, No. 13-CR-00236-JLK, 2013 WL 3662871, at *5 (D. Colo. July 12, 2013) ("'The Bail Reform Act favors pretrial release of defendants ... and '[t]he court must resolve all doubts regarding the propriety of release in the defendant's favor'"); *United States v. Marinez–Patino*, 2011 WL 902466, *3 (N.D.Ill. 2011) ("This process reflects the congressional judgment in the BRA that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" (citation omitted))). An administrative interest in detention is not on that scale.

The balance intended by Congress and approved by the Courts mandates release here.[5]

Finally, the fact that Mr. Alzerei does not receive credit for the present time in ICE custody is a further indication that the criminal scheme does not contemplate simultaneous administrative detention and that the INA and the BRA cannot be read in harmony. 18 U.S.C. § 3585 provides that "A defendant shall be given credit towards the sentence of a term of imprisonment for any time spent in official detention prior to the date the sentence commences." Under the governing BOP interpretation, "An inmate being held by INS pending a civil deportation determination is not being held in 'official detention' pending criminal charges." BOP Program Statement 5880.28 at 1-15A.[6] Had Mr. Alzerei not requested release, he would be receiving credit for the present time in custody; he is effectively worse off for having merited release under the BRA. Such a result cannot have been contemplated by Congress.

In sum, the two branches of the Executive must take turns. The government must either choose prosecution and release Mr. Alzerei under the BRA, or forego prosecution.

---

5 Practical concerns in this case make the case for release particularly compelling. First, the case concerns events that took place in Gaza, in 2015, and a visa application that was prepared by an international relief organization in Palestine a year later. The defendant was 15 years old at the time of the original events. He is now 19. Defense counsel faces linguistic, cultural, and logistical barriers to communication with Mr. Alzerei's parents and other actors in Palestine. Mr. Alzerei has a sponsor here in Massachusetts who knows him and his family. This person would be able to assist in communicating with people in Palestine. The sponsor cannot attend attorney visits to the jail, however, nor does counsel have access to telecommunications from the jail to Palestine. Second, as discussed at the hearing, counsel believes the Guidelines range for this case is 0-6 months. Litigating the case while detained would potentially cause Mr. Alzerei to serve more time than the case is worth. And third, as discussed at the hearing, in ICE detention Mr. Alzerei faces the prospect of being moved anywhere in the United States at any moment. Were he moved to a remote location, counsel's access to Mr. Alzerei would be severely hindered.

6 Available at: https://www.bop.gov/policy/progstat/5880_028.pdf

Respectfully submitted,

WAAD ALZEREI
By his attorneys,

*/s/ Jessica Thrall*
Jessica Thrall

*/s/ Amy Barsky*
Amy Barsky

Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061

CERTIFICATE OF SERVICE

I, Jessica Thrall, hereby certify that this document filed through email and the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 7, 2019.

*/s/ Jessica Thrall*
Jessica Thrall