THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 19-cr-10124-DJC |
| | ) | |
| WAAD ALZEREI, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S MOTION TO STRIKE AND OPPOSITION TO
DEFENDANT'S POST-HEARING SUPPLEMENT TO HIS MOTION TO DISMISS**

The United States of America (the "Government") objects to the defendant's "post-hearing supplement" to his motion to dismiss on multiple grounds, both procedural and substantive. The supplement, which was filed without leave of court three days after the June 3rd hearing on the defendant's motion, amounts to nothing more than a reply to the arguments made in writing by the Government more than a month ago. The defendant has offered no explanation for why he and his counsel could not and did not raise these new arguments sooner, instead electing to submit an eleventh-hour filing without the Court's permission or any attempt to confer with the Government. Under these circumstances, the supplemental filing should be stricken from the record of this case.

The defendant's supplemental filing also lacks merit. <u>First</u>, the D.C. Circuit in *United States v. Vazquez-Benitez*, 919 F.3d 546 (D.C. Cir. 2018), expressly considered—and in reliance on binding United States Supreme Court precedent, rejected—the notion that a perceived "general conflict" between the Bail Reform Act (BRA) and the Immigration and Naturalization Act (INA) warrants the disregard of one statute in favor of the other. Unsupported by any case law or other authority, the defendant's claim that this aspect of *Vazquez-Benitez* was "wrongly decided" is

simply not persuasive, nor is it sufficient to overcome the D.C. Circuit's well-reasoned and legally-grounded decision.[1]  Second, the defendant's suggestion that ICE cannot remove him under the INA because he remains "under confinement" until the conclusion of this criminal prosecution is both practically and legally false.  The plain language of the INA says absolutely nothing of the sort, and the ordinary meaning of the phrase "detention or confinement" compels no such conclusion.  Third, although the defendant talks at length about the importance of the BRA, he says absolutely nothing of the important government interests furthered by the INA, including its detention provisions.  The United States Supreme Court has said repeatedly that civil detention under the INA is a constitutionally permissible part of the Congress's broad power over immigration and the Executive's authority to execute that power.  *Demore v. Kim*, 538 U.S. 510, 523 (2003).  Absent some *clear indication* from Congress that the BRA displaces the INA—which there has not been—"ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial."  *Vasquez-Benitez*, 919 F.3d at 553.

---

[1] The Government also disputes that the Sixth Circuit's decision in *United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018), is distinguishable from this case or *Vasquez-Benitez* in any meaningful way.  *See* Def. Supp. at 3.  Although the defendant in *Veloz-Alonso* was awaiting sentencing (not trial), the Sixth Circuit correctly made no distinction between pre- or post-conviction defendants in deciding whether the BRA's detention provisions trump those of the INA.  Furthermore, the D.C. Circuit in *Vasquez*-Benitez apparently agreed that the defendant's post-conviction status in *Veloz-Alonso* was not a distinguishing factor, as it relied heavily on *Veloz-Alonso* in its decision (despite the fact that the defendant in *Vasquez-Benitez* was awaiting trial).  *See Vasquez-Benitez*, 919 F.3d at 554.  Consistent with these two opinions, not to mention the long-standing cannons of statutory interpretation and repeal that underlie them, the issue of whether the BRA trumps the INA is the same regardless of whether the defendant is awaiting trial, or awaiting sentencing.

**Argument**

I.   **The Defendant's Supplemental Filing Amounts to Nothing More Than an Untimely Reply Brief Filed Without Leave of Court, and Should be Stricken from the Record.**

Rule 7.1 of the Local Rules of Court requires parties to a criminal case to obtain leave of court before filing reply or post-hearing briefs. The defendant's supplement was filed without leave of Court in direct violation of that rule. More importantly, the defendant's supplement is essentially a reply to arguments raised in the Government's written opposition to his motion to dismiss. The Government filed its opposition on May 13, 2019, more than *three weeks* before the hearing on the defendant's motion. *See* ECF No. 31. By any reasonable standard, this is more than enough time for the defendant and his counsel to have considered and drafted a reply brief with the Court's permission *before the hearing*. Had they done so as required by the Local Rules, all of the relevant arguments—those of the Government *and* the defendant—could have been fairly and robustly debated during the actual hearing. Having failed to obtain leave of Court, and having failed to offer even a cursory explanation for why these new arguments could not have been raised earlier, basic notions of fairness require the Court to strike the defendant's supplemental filing in its entirety.

II.   **The Defendant's Supplemental Filing Lacks Merit**

The Court should also reject the defendant's supplemental filing because it is unsupported by any case law or legal authority, it ignores the plain and unambiguous language of the INA, and it disregards the important and well-recognized government interests furthered by the INA.

a.   <u>The BRA did not repeal or displace the INA or its detention provisions.</u>

Despite acknowledging that it is "on all fours" with this case, the defendant first asks the Court to disregard the D.C. Circuit's finding in *Vasquez-Benitez* that the INA and the BRA do not conflict "as a general matter." Def. Supp. at 1. The defendant cites no case law or other authority

3

to support his position, nor does he identify any particular cannon of statutory interpretation or other legal rule that might conceivably permit this type of *ad hoc* disregard for portions of one Congressionally-enacted statute in favor of another. The D.C. Circuit, on the other hand, properly identified the issue raised by the defendant as one of either implied or intentional repeal. *Vasquez-Benitez*, 919 F.3d at 553-54. Relying on the United States Supreme Court's discussion of statutory repeal in *Morton v. Mancari*, 417 U.S. 535 (1974), the D.C. Circuit correctly found no basis to conclude that any portion of the BRA displaces any portion of the INA. *Id.* (noting that the detention provisions of the INA and the BRA, although at times producing conflicting results, do not suggest either implied or intentional repeal); *see also Mancari*, 417 U.S. at 550 ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.").

The BRA and the INA—each enacted by Congress to promote separate, yet equally important interests—are perfectly capable of co-existing with one another. *Vasquez-Benitez*, 919 F.3d at 553-54; *Veloz-Alonso*, 910 F.3d at 270. Absent some clear indication from Congress to the contrary, there is no basis for the Court to conclude that the BRA displaces any portion of the INA. *Id.*

      b.    <u>Notwithstanding this criminal case, the defendant is subject to mandatory removal by ICE.</u>

The defendant next claims that the INA's "mandate to detain an alien upon completion of criminal 'confinement' does not attach until the criminal case concludes" – that is, until there has been a "final judgment." Def. Supp. at 2. But the INA says no such thing, and the plain meaning of the phrase "detention or confinement" as used in the INA compels no such conclusion.

Section 1231(a)(1)(A) of the INA states that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this

section referred to as the 'removal period')."[2]  In relevant part, Section 1231(a)(1)(B) states that the "removal period" begins on "the date the alien is released from detention or confinement," expressly excluding detention or confinement "under an immigration process."  Magistrate Judge Kelley ordered the defendant released in this case on April 8, 2019, requiring only that he surrender his passport, maintain his residence and restrict his travel to Massachusetts (in addition to other standard conditions).  *See* ECF No. 17 (order setting conditions of release).  Since that time, he has been in ICE custody.  As the defendant is no longer detained or confined in this case—he remains confined purely "under an immigration process"—the removal period has begun and the INA mandates that he be detained and deported.

Nonetheless, although it is not entirely clear from his supplemental filing, the defendant appears to suggest that he remains "confined" in this case until final judgment has entered.[3]  This theory defies the plain meaning of the word "confine," which, as the Supreme Court has noted, is often used interchangeably with the word "detain" in both traditional and legal dictionaries.  *See Jennings v. Rodriguez,* 138 S.Ct. 830, 848 (2018) (noting that the Oxford English, Webster's, American Heritage and Black's Law dictionaries all define "detain" using the word "confine" or "confinement").  Perhaps more to the point, Section 1231(a)(4)(A) of the INA expressly prohibits ICE from removing an alien "who is sentenced to imprisonment until the alien is released from imprisonment," while also clarifying that "parole, supervised release, probation, or possibility of arrest or further imprisonment *is not reason to defer removal*."  18 U.S.C. § 1231(a)(4)(A)

---

[2] The defendant is subject to a final order of removal and, in fact, is subject to expedited removal.

[3] The Government fails to see how this could possibly be true given that he is currently being detained by ICE pursuant to a valid and lawful immigration detainer.  The defendant is not in the custody of the United States Marshals Service or the Board of Prisons, nor is he subject at this time (again, because he is being detained by ICE) to the conditions of released ordered by Judge Kelley.

(emphasis supplied). If parole, supervised release and probation (all of which subject the defendant to conditions of one kind or another) are not sufficient grounds to toll the removal period under the INA, then the unobtrusive release conditions imposed upon the defendant by Magistrate Judge Kelley cannot be either.[4] Thus, this aspect of the defendant's supplemental filing must also be rejected.

    c.    <u>The INA was enacted by Congress to address important government interests concerning immigration.</u>

The defendant's prolonged discussion about the BRA's "precise balancing of interests" is, in many ways, a *non sequitur*. It is well-settled that the BRA is Congress's attempt to craft a bail statute that balances societal interests with the rights of the accused. However, it does not follow that the INA—a separate congressional enactment designed to address the important issue of immigration—is thereby void merely because it, too, allows for the detention (albeit administrative) of illegal aliens, some of whom are also subject to criminal prosecution. Just like the BRA was intended by Congress to fairly address the issue of bail, the INA reflects Congress's attempt to balance the societal interests associated with sound immigration laws and policies against individual rights and freedoms. The defendant, like the courts, does not get to choose which of these congressional enactments applies to him, or which is more worthy of enforcement.

---

[4] As a practical matter, illegal aliens are routinely removed from the United States while in the midst of criminal proceedings, long before trial or final judgment. Take, for example, *United States v. Adilson Barbosa*, Case No. 17-cr-10194-FDS. The defendant there was charged with one count of illegal reentry, and subsequently released by Magistrate Judge Boal under the BRA pending trial. ECF No. 19. As he was subject to a final order of removal from the United States, the defendant was immediately taken into ICE custody upon his release in the criminal case. ECF No. 21. He was removed from the United States by ICE approximately three weeks later, however, prompting the Government to dismiss the indictment against him without prejudice. ECF Nos. 22, 23. In other words, in that case, the fact that the defendant was both under indictment and subject to release conditions did not toll the "removal period," nor did it prevent ICE from removing the defendant. Stated differently, the defendant in that case was not "detained or confined" in the criminal case within the meaning of the INA merely because the Magistrate Judge ordered him released on conditions.

This is especially true where Congress has not said—either directly or implicitly—that one statute takes precedence over the other. *Vazquez-Benitez*, 919 F.3d at 553 ("[C]ourts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."). The Court has no choice, therefore, but to reject the defendant's motion.

## Conclusion

Having failed to seek leave of court or explain its untimeliness, the defendant's supplemental filing must be stricken from this case. But even if the Court is inclined to consider the new arguments raised by the defendant, they each lack merit. For the reasons set forth above, in the Government's opposition, and by the Government during the June 3rd hearing, the Court must deny the defendant's motion to dismiss.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Jason A. Casey*
Jason A. Casey
Assistant United States Attorney

Dated: June 21, 2019

## Certificate of Service

I hereby certify that the foregoing documents filed through the ECF system will be sent electronically to counsel for the defendant, who are registered participants identified on the Notice of Electronic Filing (NEF).

By: */s/ Jason A. Casey*
Jason A. Casey
Assistant United States Attorney
