## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____
                            )
                            )

**UNITED STATES OF AMERICA**    )
                            )

**v.**                             )     **Criminal Action No. 19-10124-DJC**
                            )

**WAAD ALZEREI**           )
                            )
_____ )

### MEMORANDUM AND ORDER

**CASPER, J.**                                              **June 27, 2019**

## I.     Introduction

Defendant Waad Alzerei ("Alzerei") has moved for release from custody or, alternatively, dismissal of the indictment against him with prejudice. D. 25. Having considered the parties' filings and heard oral argument from counsel, and for the reasons stated below, the Court DENIES the motion.

## II.     Factual Background and Procedural History

Alzerei is a nineteen-year-old stateless national of the Palestinian Authority from Gaza. D. 19 ¶ 1; D. 25 at 1. On or about April 2016, Alzerei applied for a United States tourist visa. D. 19 ¶ 2. Among other things, Alzerei stated on his visa application that he had never "committed, ordered, incited, assisted, or otherwise participated in extrajudicial killings, political killings, or other acts of violence." Id. In connection with his visa application, officials from the United States Department of State interviewed Alzerei on or about October 19, 2016. D. 19 ¶ 3. Alzerei, who had his right leg amputated above the knee in 2015, was questioned about his leg injury. Id. Alzerei explained that he had been shot in the leg by a stray bullet from the Israeli Defense Forces while picking olives in an agricultural field near the border of Gaza and Israel. Id. The State

Department approved Alzerei's application and issued him a B-1/B-2 tourist visa on or about November 2, 2016. Id. The visa was valid through October 31, 2019. Id. In 2017, using the visa, Alzerei traveled to the United States for about six months and was fitted for and provided with a prosthetic leg. D. 19 ¶ 4.

On or about February 27, 2019, Alzerei arrived at Logan Airport in Boston on a flight from Egypt and was interviewed by two officers from United States Customs and Border Protection ("CBP") to determine if he met the admissibility requirements to enter the United States. D. 19 ¶ 5. Alzerei explained that he was a Palestinian citizen, presented them with his visa and told them he was traveling to the United States for treatment for his leg. Id. During the interview, which was conducted with an Arabic interpreter, Alzerei told the officers that he had not been involved in any type of riot, rally or demonstration when he was shot, nor had he ever been involved in any such demonstration. D. 19 ¶¶ 5-6.

After the initial interview at the airport, the officers conducted a search of Alzerei's mobile phone. D. 19 ¶ 7. During the search, the officers found numerous photographs, images and videos suggesting Alzerei's affiliation with the Popular Front for the Liberation of Palestine ("PLFP") and Hamas, both of which have been designated as foreign terrorist organizations by the United States. Id. The officers found photographs taken on the same day Alzerei was shot in the leg that appeared to depict Alzerei throwing rocks at the Israeli Defense Forces. D. 19 ¶ 8.

In a second interview, Alzerei gave a sworn statement from Alzerei to the CBP officers. D. 19 ¶ 9. One of the officers was a fluent Arabic speaker who translated and typed Alzerei's answers. Id. Alzerei admitted that the photographs depicted him shortly before he was shot rioting and slinging rocks at Israeli troops near the border. D. 19 ¶ 10. Alzerei stated that he lied to the

State Department about the circumstances that led to his injured leg because he did not want to be arrested by the Israelis and because he knew he could not otherwise obtain a visa.  Id.

Determining that Alzerei's visa had been procured unlawfully, CBP denied Alzerei entry to the United States, deemed him inadmissible and issued a final order of removal.  D. 31 at 4. Alzerei then sought asylum and was detained by United States Immigration and Customs Enforcement ("ICE") pending a "credible fear" interview.  Id.  While the asylum claim was pending, the United States Attorney for this district filed a criminal complaint against him, charging Alzerei with visa fraud in violation of 18 U.S.C. § 1546(a) and making false statements in violation of 18 U.S.C § 1001(a)(2) (Count 2).  D. 1.  Alzerei then withdrew his asylum claim and was transferred to the custody of the United States Marshals Service ("USMS").  D. 31 at 4.

At Alzerei's initial appearance, the government moved for detention on the sole ground that Alzerei was a flight risk.  D. 5; D. 27 at 4.  After the matter was scheduled for a detention hearing on April 5, 2019, D. 9, Alzerei filed a motion for release, D. 11, which the government opposed, D. 14.  The Court (Kelley, M.J.) held the detention hearing over the course of two days on April 5 and 8, 2019.  D. 13, 16, 27-28.  At the conclusion of the hearing, on April 8, 2019, the Court ordered Alzerei's pretrial release subject to conditions including, but not limited to that he surrender his passport, not obtain a passport, report to Pretrial Services as required and have his travel restricted to Massachusetts and maintain his current residence.  D. 17.  Because he remained subject to a removal order at the time of Judge Kelley's order of release, Alzerei was then transferred from USMS custody to ICE custody pending his removal from the United States.  D. 25 at 2; D. 31 at 4.

Shortly thereafter, on April 16, 2019, a grand jury indicted Alzerei for visa fraud and making false statements.  D. 19.  Two days later, Alzerei filed for asylum in the United States,

which paused ICE's efforts to remove him.  D. 31 at 4.  Alzerei still remains in ICE custody pending the full adjudication of his asylum claim.  (At the motion hearing on June 4, 2019, counsel informed the Court that his asylum petition has been denied, but his appeal of that denial remains pending).  If his asylum claim is denied or withdrawn, the government has informed the Court that ICE will renew its efforts to remove Alzerei from the United States.  D. 25 at 3; D. 31 at 5.

Alzerei has now moved for release from custody or, alternatively, dismissal of the indictment.  D. 25.  The Court has considered the parties' filings (including the parties' post-hearing filings, D. 36-37)[1] and heard counsel on the motion.

## III.    Discussion

### A.    The Bail Reform Act and the Immigration and Naturalization Act

At base, Alzerei contends that, having been charged with federal crimes and having been granted pretrial release after a detention hearing under the Bail Reform Act, 18 U.S.C. §§ 3141, *et seq.* ("BRA"), the government should be precluded from detaining him in ICE custody under the Immigration and Naturalization Act ("INA") while such criminal charges are pending against him. As Alzerei contends, "the government cannot have it both ways.  It must choose:  go forward with prosecution and release Mr. Alzerei under the BRA, or, alternatively, relinquish him to the immigration process and forego prosecution."  D. 25 at 1.  The different statutory frameworks that apply (and the more persuasive caselaw interpreting the intersection of same) do not, however, compel such a choice.

The upshot of the two Circuit decisions on this specific issue,  United States v. Veloz-Alonso, 910 F.3d 266 (6th Cir. 2018) and United States v. Vasquez-Benitez, 919 F.3d 546 (D.C.

---

[1] The Court DENIES the government's motion to strike Alzerei's post-hearing filing, D. 36, and has considered the substance of both filings, D. 36 and D. 37, in the resolution of the pending motion for release or, alternatively, dismissal.

2019), is that "ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial." Vasquez-Benitez, 919 F.3d at 553. This is true not because of a "tension" between the release provisions of the BRA and ICE's authority to detain aliens under the INA, D. 25 at 1, but because the BRA and INA serve different purposes, which sometimes, as is the case here, overlap.

The BRA commits the decision of pretrial detention or release to the Court, upon the motion of the government, such that "[t]he judicial officer shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured bond . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). That Section 3142(d) of the BRA provides that if ICE does not take custody of a removable alien during an arrestee's temporary detention period, a defendant "shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings," 18 U.S.C. § 3142(d), does not mean that ICE's authority to act as to removal is severed, particularly where, unlike in this case, there must be a judicial determination that the defendant "may flee or pose a danger to any other person or the community" for this provision to be triggered. Id. § 3142(d)(2). That is, "nothing in the BRA prevents other government agencies [here, ICE] . . . from acting pursuant to their lawful duties." Veloz-Alonso, 910 F.3d at 269.[2] Here, where a final order of removal for Alzerei has issued, ICE must facilitate his removal from the United States (if his pending asylum petition is not resolved in his favor), under clear statutory authority (that the defense does not

---

[2] Although Veloz-Alonso, 910 F.3d 266, involved a defendant awaiting sentencing, this Court does not find its reasoning any less persuasive. Moreover, Vasquez-Benitez, 919 F.3d 546, relied upon Veloz-Alonso, and the D.C. Circuit case involved a defendant's pretrial custody as this case does.

contest the agency has under the INA). 8 U.S.C. § 1231(a)(1)(A). This authority is not in conflict with the "permissive release" that is allowed under the BRA. Veloz-Alonso, 910 F.3d at 269. Moreover, this reading is consistent with the principal that "when two statutes are capable of co-existence, . . . [the court], absent a clearly expressed congressional intention to the contrary, [must] regard each as effective." Vasquez-Benitez, 919 F.3d at 553 (quoting Morton v. Mancari, 417 U.S. 535, 551 (1974)).

To be sure, at least in this Court's experience, the effective shift of Alzerei's custody from ICE custody (upon his detention upon the issuance of an order of removal) to USMS custody (upon the filing of the criminal complaint) and then back to ICE custody (after the Court's order of release), while awaiting trial on criminal charges, is unusual. Although the Court agrees with the Circuits cited above that there is no irreconcilable conflict between the BRA and INA as some district courts have found, see, e.g., United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167, 1179 (D. Or. 2012); United States v. Galitsa, 17-cr-00324, at 7-8 (S.D.N.Y. July 28, 2016), this Court does agree with those district courts that "ICE may not use its detention authority in order to hold an alien for criminal proceedings." Galitsa, at 6. The government appears to acknowledge same, both in its opposition, D. 31 at 9, and at the motion hearing, agreeing that, if Alzerei's asylum petition is resolved against him, ICE will move forward with its efforts to remove him, id., regardless of whether the criminal charges against him have been resolved. Draft transcript, 6/4/19 hearing. That is, it is perhaps an unusual situation where the U.S. Attorney's Office, having indicted a defendant, runs the risk that he will be removed by ICE before the conclusion of their prosecution. Such scenario, however, is not barred by the BRA or any intersection with the INA.

Having found no basis to release Alzerei and concluding that the government's choice to proceed with prosecution even as Alzerei may be removed by ICE from the United States before

the disposition of that prosecution, the Court also finds no basis for dismissal of the indictment, the alternative relief sought here.

**IV.**     **Conclusion**

For the foregoing reasons, the Court DENIES Alzerei's  motion for release from custody or, alternatively, for dismissal of the indictment, D. 25.

**So Ordered.**

/s/ Denise J. Casper
U.S. District Judge